## FORT WAYNE AND NORTHERN INDIANA TRACTION COMPANY *v.* SMITH.

[No. 8,440. Filed December 11, 1914.]

1. APPEAL. — *Review.* — *Verdict.* — *Answers to Interrogatories.* — Where the jury's answers to interrogatories conform to the evidence and are not in conflict with the general verdict, such verdict, if sustained by some evidence is conclusive. p. 307.

2. RAILROADS.—*Crossing Accidents.—Verdict.—Answers to Interrogatories.*—Where, in an action for injuries sustained in a railroad crossing accident, a verdict for plaintiff included a finding that defendant's car was run at a dangerous and unusual rate of speed, and that plaintiff was in the exercise of due care, and the evidence upon the questions of negligence and contributory negligence was of such character that reasonable men might differ as to the inferences to be drawn therefrom, the question was for the jury, and its verdict, not being overcome by anything contained in the answers to interrogatories, must stand. p. 307.

3. NEGLIGENCE.—*Contributory Negligence.—Instructions.*—An instruction telling each juror to picture himself in the place of plaintiff, under the circumstances disclosed by the evidence, himself using the care which the evidence showed the plaintiff to have used, and then determine whether such conduct was the conduct of a reasonably prudent man, gave to the jury an erroneous standard of comparison, since the proper method of determining the question of contributory negligence is to consider what a reasonably prudent man would have done under the circumstances, and not what individual jurors might themselves have done. pp. 309, 310.

4. TRIAL.—*Instructions.—Weight of Evidence.*—A trial court may not instruct the jury as to the manner in which it shall consider the evidence, or what weight it shall give to it, or in any manner invade the jury's province in the consideration of the facts before it. p. 310.

From Grant Circuit Court; *H. J. Paulus,* Judge.

Action by Benjamin Smith against the Fort Wayne and Northern Indiana Traction Company. From a judgment for plaintiff, the defendant appeals. *Reversed.*

*Condo & Browne, Nelson G. Hunter* and *Barrett & Morris,* for appellant.

*S. A. Stricler* and *Murphy & Todd,* for appellee.

IBACH, J.—This action, originally brought by appellee in the Wabash Circuit Court, and taken by change of venue to the Grant Circuit Court, was to recover damages from appellant for negligently injuring appellee while he was driving over appellant's railroad tracks at a public highway crossing. Issues were joined by an answer of general denial, the cause was tried by a jury and a verdict returned in

favor of appellee for $1,000, together with answers to interrogatories. The court rendered judgment on the verdict for appellee. The errors assigned involve the action of the court in overruling appellant's motion for judgment in its favor on the answers of the jury to the interrogatories, and in overruling its motion for a new trial.

By the answers to interrogatories it is found that appellee on the date of his injury was driving in a southwesterly direction on Mill Creek Pike, which is a continuation of Pike Street, in the city of Wabash, just outside the city limits of that city, towards the Yankee road crossing. He was in a buggy drawn by one horse, with the blinds drawn, and was driving on the north side of appellant's track. About thirty rods before he reached the crossing, he looked back along a straight and level track for a distance of a quarter of a mile to ascertain if a car was approaching from the rear, seeing none, he proceeded to the crossing, and attempted to cross over. At the time appellee started to cross the tracks appellant's car was slowing up to allow passengers to alight, and was then moving at the rate of three and one-half or four miles per hour, while appellee was driving at the rate of seven and one-half miles per hour for thirty rods before attempting to cross the tracks.

Appellant's motorman first discovered appellee was starting to cross the tracks when fifteen or twenty feet distant from his buggy. Questions twenty-nine and seventeen, and the answers thereto, are as follows: 29. "Did defendant's motorman on the car alleged to have caused plaintiff's injuries have any notice or warning that plaintiff intended to drive his said horse and buggy upon and over the said railway crossing where the collision occurred until it was too late to stop his car to avoid said collision? Yes." 17. "From the time defendant's motorman first discovered that plaintiff started to go over said crossing was it possible for defendant's said motorman to have stopped his car in time to avoid a collision with plaintiff's horse and buggy? Yes."

Appellee was possessed of good hearing and eyesight and knew that appellant operated its cars along the tracks which he attempted to cross, and if he had looked within fifty feet before he approached the crossing, could have avoided the collision. The gong was sounded by the motorman seventy-five feet east of the crossing, and the noise of the approach of the car could be heard for fifteen or twenty feet.

1. These answers conform to the evidence, and if there is some evidence to support the general verdict, and the answers to the interrogatories are not in conflict therewith, the court's ruling on such verdict must be upheld.

The charge in the complaint is that appellant ran and operated its car over said street and highway at a great and unreasonably high rate of speed, to wit, twenty

2. miles an hour, and while so running at a dangerous, unusual and reckless rate of speed, carelessly and negligently ran said car against plaintiff's horse and buggy, and the servants in charge of such car, who saw or by ordinary care could have seen that plaintiff was in a place of danger, made no effort to stop said car nor to sufficiently slacken its speed to prevent the collision, and that such servants, after they saw, or could by ordinary care have seen, that plaintiff was in a place of danger from which he was trying to escape, could have slackened the speed of the car, or stopped it, in time to avoid the collision. The issues thus presented were issues of fact for the jury, to be determined from all the conditions and circumstances shown by the evidence to have existed at the time of the alleged injury. The general verdict includes a finding that appellant's car was run at an unusual and dangerous rate of speed, and that appellee was in the exercise of due care, and these facts must be considered in connection with all the other facts and circumstances revealed by the evidence in determining the question of appellee's contributory negligence.

The evidence showed that appellee had looked behind him when thirty rods from the crossing, he could see a

quarter of a mile or more down the track, and saw no car coming, he did not know a car was approaching at that time at a greater distance than a quarter of a mile away, or that it was running any faster than the ordinary rate of speed, and he had been familiar for eight years with the operation of cars on that track. It also showed that the thoroughfare upon which the car was traveling was situated close to a populous city in a thickly built up section traveled by many people and that he did not hear the sound of the gong given by the motorman while approaching the crossing. Furthermore, it appears that appellee was driving at a speed of one mile in eight minutes, and after looking he had to travel but thirty rods before crossing appellant's tracks and that a car would have to travel more than three times as fast as he, or faster than the usual rate of speed, to collide with him at the crossing. That he was driving in a closed buggy of such a character that the motorman, who saw him for 300 feet or more before he attempted to cross the track, could not tell whether any person was in the buggy, and that previous to crossing he was driving so close to the track that a car could not pass him without a collision, are all circumstances which may be considered by the jury in determining whether appellee in attempting to cross used ordinary care, and are circumstances which would tend to charge the motorman with a greater degree of care than if he had seen appellee in an open buggy in plain view, and at a greater distance from the track. The jury found that after seeing appellee was about to cross, appellant's motorman could have stopped his car in time to avoid the injury. We deem it unnecessary to further consider the evidence except to state that appellee's testimony, which the jury must have believed, sustains the verdict, for where, as in this case the question of contributory negligence has been so presented that reasonable men might differ as to the inferences to be drawn therefrom, bearing upon that question, it then becomes a question of fact for the jury, and the jury hav-

ing found by its verdict that appellee was free from contributory negligence, such verdict will not be disturbed. We find nothing in the answers to interrogatories which would entitle appellant to a verdict thereon.

Instruction No. 14, given on the court's own motion, of which appellant complains, is as follows: "In determining the question of whether or not the plaintiff was in the exercise of ordinary care and prudence for his own safety at the time, and just prior to the time of the accident complained of, it will be proper for each one of the jurors to imagine himself at the time in the buggy occupied by the plaintiff at and during said time, with said buggy in the condition, as to curtains, drawn or undrawn, if shown by the evidence, and drawn by plaintiff's said horse and approaching to and driving upon said crossing, and receiving said injury, and in so doing, imagine yourself as exercising just the care, if any, as the evidence shows the plaintiff to have exercised for his own safety, if any, and no more and then placing yourself and conducting yourself in all things as the evidence may show that plaintiff conducted himself at and prior to said accident, and then ask yourselves if such conduct amounted to the exercise of such care and prudence on the part of the plaintiff as a reasonably careful prudent man should and would have been expected to exercise for his own safety, and if you find that it was that he was not in fault, but in all things exercised reasonable care and caution for his own safety and also find that the defendant was negligent as charged and that as a proximate result of such negligence on his part the plaintiff was injured as charged, your finding should be for the plaintiff. On the other hand, if as thus placed by your imagination in plaintiff's buggy, equipped and encased as shown by the evidence, and drawn by plaintiff's said horse driven as the same may be shown to have been driven by him, and exercising such care, and only such care, if any, as the plaintiff is shown to have exercised for his own safety

and to avoid such accident, in the presence of such circumstances, conditions and surroundings as may be disclosed by the evidence, as if in answer to the question as to plaintiff's case, if any, you are unable to say from all the evidence before you that he did exercise such, but on the contrary are convinced by the evidence that he failed to use such care and caution for his own safety as should be expected of a reasonably careful and prudent man in approaching and entering said crossing, and that such failure on his part directly contributed to the occurrence of the collision, your verdict in such event should be for the defendant.''

4.   This instruction is subject to one serious objection. It is a well-known principle of law that the judge has no right to tell the jury in what manner it shall consider the evidence, what weight it shall give to it, or in any manner to invade the jury's province in the consideration of the facts before it.   By this instruction each juror was told to picture himself in the place of plaintiff, under the circumstances disclosed by the evidence, himself using the care which the evidence showed the plaintiff to have used, and then to ask himself if such conduct was the conduct of a reasonably prudent man.   To tell the jurors to put themselves in the place of the plaintiff was not giving them a proper standard of comparison.   The proper standard of comparison was with the conduct of a reasonably prudent man.   The question for each juror to decide, was not what he would have done under the circumstances, but what a reasonably prudent man would have done.   This instruction would have a tendency to lead each juror to say that if he in the circumstances plaintiff was in, would have acted as plaintiff did he, the juror, would not have been negligent, and thus plaintiff was not guilty of contributory negligence.   It would not have been improper to have told the jurors that they might picture plaintiff in the situation in which the evidence disclosed him, and then decide whether his conduct was that of a reasonably prudent man, but it

was error, for which the judgment must be reversed, to tell the jurors to imagine themselves in the place of the plaintiff. *Northern Supply Co.* v. *Wangard* (1904), 123 Wis. 1, 100 N. W. 1066, 107 Am. St. 984; *Hale* v. *State* (1898), 122 Ala. 85, 26 South. 236.

For the giving of this instruction the judgment is reversed, and the cause remanded for new trial.

NOTE.—Reported in 107 N. E. 31. As to duties and liability of street railway companies to their passengers, see 118 Am. St. 461. As to injuries by street car collisions with vehicles or horses, see 25 L. R. A. 508. See, also, under (1) 3 Cyc. 348; (2) 33 Cyc. 1907, 1142; 38 Cyc. 1517, 1927; (3) 29 Cyc. 653; (4) 38 Cyc. 1756, 1646, 1511.